# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

## CASE NO. _____

HELLO HOSPITALITY IV, LLC D/B/A
ST ARNOLDS, HELLO HOSPITALITY III, LLC
D/B/A ST ARNOLDS MUSSEL BAR, and
HELLO HOSPITALITY VI, LLC d/b/a
ST. ARNOLDS MUSSEL BAR BETHESDA,

      Plaintiffs,                          **CLASS ACTION**

v.                                           **JURY DEMAND**

ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY D/B/A
ERIE INSURANCE EXCHANGE,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Hello Hospitality IV, LLC d/b/a St Arnolds ("St Arnolds"), Hello Hospitality III, LLC d/b/a St Arnolds Mussel Bar (St Arnolds Mussel Bar"), and Hello Hospitality VI, LLC d/b/a St Arnolds Mussel Bar Bethesda ("St Arnolds Bethesda") (together, "Hello Hospitality" or "Plaintiff"), on behalf of themselves and all others similarly situated, state as follows for their Complaint against Defendant Erie Insurance Property & Casualty Company d/b/a Erie Insurance Exchange ("Defendant" or "Erie"):

## INTRODUCTION

1.      This is a class action brought by Plaintiff Hello Hospitality against Defendant Erie, related to insurance policies that insure Plaintiff's properties, business operations, and potential liability in connection with Plaintiff's business operations. These insurance policies include Income Protection coverage, Extra Expense coverage, Contingent Business Interruption coverage,

and coverage for loss due to the actions of a Civil Authority, but do not contain any exclusions for viruses such as COVID-19.

2.    Plaintiff is a small business that purchased Erie's insurance policy and made premium payments for a policy that, in the event of a catastrophe requiring a shutdown of business operations, would require Erie to honor its contractual obligation to provide coverage. In March 2020, such a catastrophe took place when Plaintiff was forced to close its restaurant businesses due to the COVID-19 pandemic. All across the country, including in Maryland, Washington, DC, and New Jersey, government authorities issued closure orders to retail establishments, including the businesses operated by Hello Hospitality, in an effort to stop the rapid spread of the deadly COVID-19 virus. Orders from Civil Authorities requiring businesses to close have resulted in massive losses to businesses throughout the country. As a result, many insureds, including Plaintiff, filed claims for Income Protection coverage, Extra Expense coverage, and coverage for losses due to the actions of a Civil Authority.

3.    In response to the business interruption claims filed by Plaintiff and thousands of other class members resulting from the COVID-19 pandemic, Defendant Erie has systematically denied and continues to deny and refuses to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies that are, in all material respects, identical. Defendant's decision to not provide coverage and/or its decision to refuse to pay claims under the common policy forms issued to Plaintiff and the putative class members constitutes a breach of contract and provides them with the right to seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the class members establishing that they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the businesses losses it has sustained.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff St Arnolds is a limited liability company organized under Washington, DC law with its principal place of business located at 1827 Jefferson Place NW, Washington DC, 20036-2557. Plaintiff St Arnolds Mussel bar is a limited liability company organized under Washington, DC law with its principal place of business located at 3433 Connecticut Ave NW, Washington DC 20008-1304. Plaintiff St Arnolds Bethesda is a limited liability company organized under Maryland law with its principal place of business at 7525 Old Georgetown Rd, Bethesda MD 20814-6121. Hello Hospitality operates three restaurants: two in Washington DC and one in Bethesda, Maryland. One or more of the members of Hello Hospitality are citizens of Washington, DC.

5.      Defendant Erie is a Pennsylvania business corporation with its principal place of business in Erie, Erie County, Pennsylvania. Erie is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in Pennsylvania and across the country, including in states like New Jersey.

6.      At all times material, Erie engaged in substantial and not isolated activity on a continuous and systematic basis in the state of New Jersey by issuing and selling insurance policies in New Jersey and by contracting to insure property located in New Jersey.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because there is diversity between Defendant and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of

interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this district and/or a substantial party of the property that is the subject of the action is situated in this district.

10.     This Court has personal jurisdiction over Defendant because Plaintiff's claims arise out of, among other things, Defendant conducting, engaging in, and/or carrying on business in New Jersey; Defendant breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendant contracting to insure property in New Jersey. Defendant also purposefully availed themselves of the opportunity of conducting activities in the state of New Jersey by marketing its insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

## FACTUAL BACKGROUND

### A. *Insurance Coverage*

11.     On or about October 15, 2019, Hello Hospitality obtained the Policy, a property insurance policy issued and underwritten by the Defendant. The insured premises under the policy are 1827 Jefferson Place NW in Washington DC; 3433 Connecticut Avenue NW in Washington, DC; and 7525 Old Georgetown Road in Bethesda, Maryland. These are the locations of Hello Hospitality's three restaurants. A copy of the Hello Hospitality Policy is attached as Exhibit A.

12.     The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issues by Erie to the members of the putative class as defined herein.

13.     The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

14.     In accordance with the all-risk nature of the Policy, Erie agreed to pay for all losses caused by a "Covered Cause of Loss," stating that the policy "insureds against direct physical 'loss', except 'loss' as excluded or limited in this policy."

15.     The Policy provides "Income Protection" coverage, defined as "loss of 'income' and/or 'rental income' you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to the property on the premises described in the 'Declarations' from a peril insured against."

16.     The Policy also provides "Extra Expenses" coverage, which is "provided at the premises described in the 'Declarations,'" and which "means necessary expenses you incur due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against."

17.     The Policy defines "interruption of business" to mean "the period of time that your business is partially or totally suspended and it: 1. Begins with the date of direct 'loss' to covered property caused by a peril insured against; and 2. Ends on the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality."

18.     The Policy defines "extra expense" to mean "the necessary expenses incurred by you during the 'interruption of business' that would not have been incurred if there had been no direct 'loss' to covered property caused by a peril insured against."

19.     The Policy defines "loss" to mean "direct and accidental loss of or damage to covered property."

20.     The terms of the Policy also provide the insured with insurance coverage for income protection, along with any necessary extra expenses incurred, when access to the Insured's properties is specifically prohibited by Civil Authority Orders. This additional coverage is identified as coverage under "Civil Authority" and states in part as follows:

**C. Additional Coverages**

**1. Civil Authority**

When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:

  a.  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and

  b.  The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

21.     The capitalized term "Civil Authority" is not defined by the Policy. In one section of the Policy, however, Civil Authority relates to a "governmental authority."

22.     The Civil Authority coverage is an independent basis for business interruption coverage that can be triggered even when the standard business interruption coverage is not.

23.     The Policy also provides "Contingent Business Interruption" coverage, under which Erie agrees to pay "for your contingent income meaning loss of 'income' or 'rental income' you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to Building(s) or Business Personal Property of 'dependent properties' from a peril insurance against."

24.    "'Dependent properties' means premises operated by others whom you depend on in any way for continuation of your normal business operations" and include:

a. Contributing Locations which mean those premises you depend on as a source of materials or services that you need for your operations. Services does not include water, communication, power supply, or waste water removal properties;

b. Recipient Locations which mean those premises you depend on as a customer for your products or services;

c. Manufacturing Locations which mean those premises you depend on to manufacture products for your customers under contract or sale; or

d. Leader Locations which mean those premises you depend on to attract customers to your business.

25.    "Interruption for business" for Contingent Business Interruption means "the period of time that your business is suspended and it: a. Begins with the date of direct 'loss' or 'damage' to the 'dependent property' caused by a peril insured against; and b. Ends on the date when the 'dependent property' should be repaired, rebuilt, or replaced with reasonable speed and similar quality."

26.    As to all of the foregoing coverages, the Policy states that Defendant will "pay the actual loss of 'income' and/or 'rental income'" sustained by Plaintiff, subject to certain conditions.

27.    The Policy defines "income" to mean "the sum of net income (net profit or net loss before income taxes) that would have been earned or incurred and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests, and rents."

28.    The Policy defines "rental income" to mean "1. The rents from the tenant occupancy of the premises described in the 'Declarations'; 2. Continuing operating expenses incurred by the business such as: a. Payroll; and b. All expenses for which the tenant is legally responsible and for which you would otherwise be responsible; 3. Rental value of the property described in the 'Declarations' and occupied by you; or 4. Incidental income received from coin-operated laundries, hall rentals, or other facilities on the premises described in the 'Declarations.'"

29.     Defendant's standardized language in the Policy regarding coverage for loss of Income Protection coverage, Extra Expenses coverage, and coverage for loss due to the actions of a Civil Authority is present in every policy issued by Erie Insurance to Plaintiff and the putative class members that provides coverage for Income Protection, Extra Expenses, and coverage for loss due to the actions of a Civil Authority.

30.     The Policy utilizes, in part, policy forms and language published by the Insurance Services Office, Inc. ("ISO"), which publishes policy forms for use by the insurance industry—as evidenced by the ISO copyright designation at the bottom of some pages of the Policy.

31.     Despite the fact that, prior to the effective date of the Policy, ISO published and made available for use a standard virus exclusion form, Erie chose *not* to include the ISO standard virus exclusion form in the Policy. Indeed, the only mention of the word "virus" in the Policy concerns a computer virus and not any other form of organic virus such as COVID-19.

32.     The Policy does not contain any exclusion which would apply to allow Defendant Erie to completely deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

33.     Because the Policy is an all-risk policy and does not exclude Plaintiff's losses, Plaintiff's losses are covered up to the applicable limits of insurance.

**B.  *The COVID-19 Pandemic***

34.     COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 2.15 million Americans. Over 118,000 Americans have died due to COVID-19.

35.    COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

36.    The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces within the Insured Property.

37.    COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicates that COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

38.    The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

39.    COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contract with surfaces and items of physical property; (b) by human to human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

40.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

41.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

**C.   *The Covered Cause of Loss***

42.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

43.     As of the date this Complaint is filed, Washington, DC had over 10,000 total positive cases of COVID-19, and Maryland had over 68,000 positive cases.

44.     In response to the public health emergency caused by the COVID-19 pandemic, civil authorities across the United States, including the civil authorities with jurisdiction over Plaintiff in Washington, DC, have issued Closure Orders restricting and prohibiting access to Plaintiff's insured property and the insured properties of other putative class members.

45.     On March 11, 2020, Mayor Bowser declared a public emergency and public health emergency. On March 20, 2020, the Mayor extended those declarations through April 24, 2020. Additional orders signed by the Mayor on March 16, 2020 and March 20, 2020, as well as several directives from the Department of Health, provided for additional steps required to protect public health.

46.    On March 24, 2020, Mayor Bowser issued an order re "Closure of Non-Essential Businesses and Prohibition on Large Gatherings During Public Health Emergency for the 2019 Novel Coronavirus (COVID-19)." The Order required the temporary closure of the on-site operations of all non-essential businesses, including Plaintiff's business, and a cessation of all business activities at all businesses with facilities in Washington, DC, except for essential businesses. This order continued in effect through April 24, 2020.

47.    On April 15, 2020, Mayor Bowser issued an order extending the state of emergency and public health emergency for Washington, DC, and required non-essential businesses such as Plaintiff's to continue to remain closed through May 15, 2020.

48.    On May 13, 2020, Mayor Browser issued an order extending the state of emergency and public health emergency for Washington, DC, and required non-essential businesses such as Plaintiff's to continue to remain closed through June 8, 2020.

49.    On May 27, 2020, Mayor Bowser issued an order re Phase One Reopening of Washington DC. Phase One, which went into effect on May 29, 2020, required nonessential businesses such as Plaintiff to remain closed except for "minimum business operations."

50.    In Maryland, Governor Hogan issued an order on March 30, 2020, which required persons to stay at home except for those working and conducting business in essential businesses, barring all social gatherings, and closing all non-essential businesses, including Plaintiff's. As in Washington DC, this order was extended for several months.

51.    State courts within the Third Circuit have already agreed with Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020). Furthermore, orders issued in states such as New York, Colorado, Washington, Indiana, New Mexico, North Carolina, Missouri, and Illinois have

all recognized that COVID-19 poses a specific threat to property and can cause property loss and damage.

52.    The Closure Orders issued by Washington, DC and Maryland authorities covering Washington, DC and Maryland non-essential businesses (such as Plaintiff's) are similar to Closure Orders that have been issued nationwide by state and local civil authorities.

53.    The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

54.    The Closure Orders of civil authorities prohibited access to Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the Insured Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

55.    As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and other class members sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses. Plaintiff has also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties.

56.    Plaintiff's losses and expenses have continued through the date of filing this action.

57.    Plaintiff's losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

58.     Consistent with the terms and procedures of the Policy, Plaintiff submitted a claim for loss to Defendants under the Policy due to the presence of COVID-19 and the shutdown Civil Authority orders.

59.     In violation of the Policy's plain language and its own contractual obligations, Defendants denied Plaintiff's claim and refuse to pay for Plaintiff's losses and expenses.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

61.     Plaintiff seeks to represent nationwide classes defined as:

a.   All persons and entities with Income Protection coverage under a property insurance policy issued by Erie that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Income Protection Declaratory Judgment Class").

b.   All persons and entities with Civil Authority coverage under a property insurance policy issued by Erie that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

c.   All persons and entities with Extra Expense coverage under a property insurance policy issued by Erie that sought to minimize the suspension of business in

connection with COVID-19 at the premises covered by their Erie property insurance policy (the "Extra Expense Declaratory Judgment Class").

d.   All persons and entities with Contingent Business Interruption coverage under a property insurance policy issued by Defendant that suffered an actual loss of Business Income caused by direct physical loss or physical damage at a dependent property or properties ("the Contingent Business Interruption Declaratory Judgment Class").

62.   Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

63.   This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

64.   **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

65.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without limitation:

   a.   Erie issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class Members;

   b.   whether the Class suffered a covered loss based on the common policies issued to members of the Class;

   c.   whether Erie wrongfully denied all claims based on COVID-19;

   d.   whether Erie's Income Protection coverage applies to a suspension of business caused by COVID-19;

   e.   whether Erie's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

   f.   whether Erie's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

   g.   whether Erie's Contingent Business Interruption coverage applies to a loss of income caused by loss or damage to dependent properties;

   h.   whether Erie has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

   i.   whether Plaintiff and the class are entitled to an award of reasonable attorney fees, interest and costs.

66.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because Plaintiff and the other Class Members are all similarly affected by Defendant's refusal to pay under its Income Protection, Civil Authority, and Extra Expense, and Contingent Business Interruption coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class Members. Plaintiff and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

67.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class Members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

68.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Income Protection, Civil Authority, Extra Expense, and Contingent Business Interruption coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class Members, who are not parties to this action, to protect their interests.

69.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**
Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class

Members, thereby making appropriate final injunctive relief and declaratory relief, as described

below, with respect to the Class Members.

70.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is

superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action.

Individualized litigation creates a potential for inconsistent or contradictory judgments and

increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication,

economy of scale, and comprehensive supervision by a single court.

<u>**CAUSES OF ACTION**</u>

**COUNT I**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Income Protection Declaratory Judgment Class)**

71.     Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

72.     Plaintiff brings this Count individually and on behalf of the other members of the

Income Protection Declaratory Judgment Class.

73.     Plaintiff's Erie policy, as well as those of the other Income Protection Declaratory

Judgment Class Members, are contracts under which Erie was paid premiums in exchange for its

promise to pay Plaintiff and the other Income Protection Declaratory Judgment Class Members'

losses for claims covered by the policy.

74.     Plaintiff and the other Income Protection Declaratory Judgment Class Members

have complied with all applicable provisions of the policies and/or those provisions have been

waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Income Protection Declaratory Judgment Class Members are entitled.

75.     Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

76.     An actual case or controversy exists regarding Plaintiff and the other Income Protection Declaratory Judgment Class Members' rights and Erie's obligations under the policies to reimburse Plaintiff for the full amount of Income Protection losses incurred by Plaintiff and the other Income Protection Declaratory Judgment Class Members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

77.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Income Protection Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

   a.  Plaintiff and the other Income Protection Declaratory Judgment Class Members' Income Protection losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

   b.  Erie is obligated to pay Plaintiff and the other Income Protection Declaratory Judgment Class Members for the full amount of the Income Protection losses incurred and to be incurred in connection with the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT II**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

78.     Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

79.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

80.     Plaintiff's Erie insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy.

81.     Plaintiff and the other Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

82.     Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

83.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class Members' rights and Erie's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

84.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a.    Plaintiff and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    b.    Erie is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT III
### DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

85.    Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

86.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

87.    Plaintiff's Erie insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the policy.

88.    Plaintiff and the other Extra Expense Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage

obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

89.    Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

90.    An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class Members' rights and Erie's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

91.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

   a.    Plaintiff and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

   b.    Erie is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT IV**
**DECLARATORY JUDGMENT – CONTINGENT BUSINESS INTERRUPTION**
**COVERAGE**

**(Claim Brought on Behalf of the Contingent Business Interruption Declaratory Judgment Class)**

92.     Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

93.     Plaintiff brings this Count both individually and on behalf of the other members of the Contingent Business Interruption Declaratory Judgment Class.

94.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

95.     Plaintiff's Policy, as well as the policies of other Contingent Business Interruption Declaratory Judgment Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Contingent Business Interruption Declaratory Judgment Class members' losses for claims covered by the Policy.

96.     In the Policy, Defendant promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendant promised to pay for losses of business income sustained due to direct physical loss or physical damage at the premises of a dependent property.

97.     Plaintiff and Contingent Business Interruption Declaratory Judgment Class members suffered losses of business income due to direct physical loss and/or physical damage at the premises of dependent properties.

98.     These losses triggered business income from dependent properties coverage under the Policy and other Contingent Business Interruption Declaratory Judgment Class members' policies.

99.     Plaintiff and the other Contingent Business Interruption Declaratory Judgment Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

100. Defendant, without justification, disputes that the Policy and other Contingent Business Interruption Declaratory Judgment Class members' policies provide coverage for these losses.

101. Plaintiff seeks a Declaratory Judgment that its Policy and other Contingent Business Interruption Declaratory Judgment Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

102. An actual case or controversy exists regarding Plaintiff's and other Contingent Business Interruption Declaratory Judgment Class members' rights and Defendant's obligations to reimburse Plaintiff and other Contingent Business Interruption Declaratory Judgment Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

103. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a. The Policy and other Contingent Business Interruption Declaratory Judgment Class members' policies provide coverage for Class members' losses of business income from dependent properties.

    b. Erie is obligated to pay Plaintiff and the other Contingent Business Interruption Declaratory Judgment Class Members the full amount of the contingent income losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.  Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.  Entering declaratory judgments on Counts I–IV in favor of Plaintiff and the members of the Income Protection Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, Extra Expense Declaratory Judgment Class, and the Contingent Business Interruption Declaratory Judgment Class, as follows:

    i.  Income Protection, Civil Authority, Extra Expense, and Contingent Business Interruption losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.  Erie is obligated to pay for the full amount of the Income Protection, Civil Authority, Extra Expense, and Contingent Business Interruption losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

c.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

d.  Ordering Defendant to pay attorneys' fees and costs of suit; and

e.  Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: July 2, 2020                                  Respectfully submitted,

                                                              By: */s/ Lawrence E. Bathgate, II*
                                                              Lawrence E. Bathgate, II, Esq.

Fed ID No. LB-7387
lbathgate@bathweg.com
John J. Reilly, Esq.
Fed ID No. JR-0402
jreilly@bathweg.com
Ryan M. Farrell
Fed ID No. 276372018
rfarrell@bathweg.com
**BATHGATE, WEGENER & WOLF, P.C.**
One Airport Road
P.O. Box 2043
Lakewood, New Jersey 08701
Phone: (732) 363-0666

Adam M. Moskowitz
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 984280
adam@moskowitz-law.com
Adam A. Schwartzbaum
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 93014
adams@moskowitz-law.com
Howard M. Bushman
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 0364230
howard@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

William F. "Chip" Merlin, Jr.
cmerlin@MerlinLawGroup.com
New Jersey Bar No.  055182013
Florida Bar No.   364721
Michael Howard Moore
DC Bar No.  482356
mmoore@merlinlawgroup.com
(*Pro Hac Vice* Admission Pending)
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692

Rene M. Sigman
Texas Bar No. 24037492
rsigman@MerlinLawGroup.com
(*Pro Hac Vice* Admission Pending)
**MERLIN LAW GROUP**
515 Post Oak Blvd
Suite 510
Houston, Texas 77027
Tel:     (713) 626-8880
Fax:     (713) 626-8881

Christina Phillips
Illinois Bar No.   6287091
cphillips@merlinlawgroup.com
(*Pro Hac Vice* Admission Pending)
**MERLIN LAW GROUP**
181 West Madison
Suite 3475
Chicago, Illinois 60602
Tel:     (312) 260-0806
Fax:     (312) 260-0808